(No. 6899. July 1, 1942.)

EVELYN MORRISON, as surviving widow, Appellant, and EFFIE F. MORRISON, as surviving mother, Claimant, v. SUNSHINE MINING COMPANY, a corporation, Employer, Respondent.

[127 Pac. (2d) 766.]

Frank Griffin for appellant.

H. J. Hull for respondent.

AILSHIE, J.—This is an appeal from an order of the Industrial Accident Board, denying claim and dismissing application of Evelyn Morrison, who sought compensation as the widow and dependent of Chester Lee Morrison, a dceased employee of respondent.

February 26, 1935, Chester Lee Morrison intermarried with Beulah Hillman of Silverton, Colorado. November 8, 1938, an interlocutory decree of divorce was granted to her, which became a final decree May 8, 1939. In the meanwhile,

in May, 1937, Morrison and appellant (Evelyn Lehti) met in Butte, where appellant was working in a restaurant. Proofs stand undisputed, that they began living together July 3, 1937; and July 10th they agreed to become husband and wife, (although there was no formal ceremony or wedding; and from that time on they represented themselves to be, and held themselves out as, husband and wife to friends and acquaintances and all persons with whom they came in contact; that Morrison caused appellant to quit her job July 10th "because he didn't want his wife working." They visited with their friends, attended dances and public gatherings, and were generally known and referred to as husband and wife. They resided together until the latter part of October, 1937, at which time Morrison went to Nevada City, California. After securing work, he sent for appellant and she joined him in California, where they lived and held themselves out as man and wife until some time in November, 1938, at which time they returned to Butte. About June, 1939, Morrison left for Jardine, Montana, where he remained for two weeks, then returning to Butte. June 27, 1939, he wrote appellant from Jardine, addressing the letter to "Mrs. Evelyn Morrison, 22½ E. Park St., Butte, Mont." He wrote her in endearing terms, expressing the "hope [that] I get a letter from you this week," and signed the letter "Always yours, Chet."

May 3, 1937, Morrison applied to the manager of the Butte Mutual Labor Bureau, which is a hiring agency for certain of the mines including the Bellmont Mine; and he registered for employment on the registration card and gave his wife's name as Beulah and her address as Silverton, Colorado. After his return from Jardine, about July 15, 1939, he again registered at the Butte Mutual Labor Bureau for employment and there stated that he was married and that his wife was his dependent, living at 22½ East Park Street, Butte, Montana. *At the time* of the first registration, Beulah *was* his wife and resided at Silverton, Colo., but she *was not his wife* at the time of the second registration and *did not* live at 22½ East Park Street, Butte; whereas, appellant then resided at the latter address. August 3, 1939, he left for Kellogg, Idaho, appellant remaining in Butte; he wrote appellant from Kellogg. There were bills owing for back room rent and for an overcoat. When he left Butte, he spoke to Mrs. Parsons, the landlady, and told

her he was going to Idaho to get work and that his wife would occupy the room and "he would pay the bill."

When Morrison arrived in Kellogg, he applied for work at the Sunshine Mine and at that time was asked the usual preemployment questions and signed a card, stating that he was a married man; "that his wife's name was Evelyn and she resided at Kellogg, Idaho, and gave her address as 'general delivery'". He rented a room at the Bresnahan Apartments in Kellogg and he and a woman he had with him (who was *not appellant*) were known as Mr. and Mrs. Morrison. September 14, 1939, Morrison was instantly killed as a result of an accident arising out of and in the course of his employment with the Sunshine Mining Company.

September 30, 1939, Evelyn Morrison (appellant) made a claim for compensation, giving date of her marriage as of July 3d, 1937, and as being "wholly" dependent on deceased at time of accident. August 12, 1940, petition for hearing before the Board, was received from appellant. September 12, 1940, claim for compensation by "Effie F. Morrison", mother of deceased, was filed, showing her residence to be Sugar City, Colorado, and being "only partially" dependent on deceased for support at time of accident. The claimant, "Effie F. Morrison", made no appearance at the hearing nor caused any one to appear in her behalf.

Respondent, for the purpose of disproving appellant's contention, that she was the wife of the decedent, introduced three witnesses from Kellogg, two of whom testified that the day following the accident, a woman, representing herself to be Mrs. Morrison, stated to them that she was Chester Lee Morrison's wife. These statements were made after Morrison's death and in the absence, and without the knowledge, of appellant. The third witness, Mrs. Emma Eva, testified that she was the keeper of the Bresnahan Apartment house in Kellogg; and that sometime (neither the day nor month designated) she rented two adjoining rooms to a man named Morrison and a man named Gillan; and they represented that they were married men; and later the rooms were occupied by these men, each with a woman represented to be his wife; that, after the arrival of the alleged (Kellogg) Mrs. Morrison, Morrison introduced the woman as "my wife, Mrs. Morrison." Gillan and

wife left Kellogg before the accident occurred, in which Morrison was killed; and the alleged Mrs. Morrison (No. 2) left sometime after the funeral; and she was not produced as a witness at the trial of this case. Respondent's counsel stated at the time of the trial, "She has left the city and is not available. We know nothing about her."

Now it seems clear that this woman's statements, made after the death of Morrison and in the absence of and without the knowledge of appellant, and wholly self-serving, were the purest hearsay and inadmissible for any purpose in this case. It does not fall within any of the exceptions to the hearsay rule. (20 Am. Jur., p. 467, sec. 555; 35 Am. Jur., p. 320, sec. 214; *Drawdy v. Hesters*, 130 Ga. 161, 60 S.E. 451, 457, 15 L.R.A., N.S., 190, and note.) Nor was it any part of the *res gestae*.

Appellant has shown successfully, and without contradiction, that she began living with Morrison July 3, 1937, and that they agreed to assume, and did assume, marital relations and definitely became husband and wife July 10th of the same year; and that they lived together from that time on until he left in August, 1939, for the Coeur d'Alenes to secure work. Morrison and appellant assumed marital relations and duties prior to the time when the decree of divorce, granted his former wife, Beulah, became final. There was, nevertheless, an uninterrupted continuance of the assumption of "marital rights, duties, or obligations", until Morrison left Butte for Kellogg in August preceding his death September 14, 1939.

The only question requiring our decision is: Was claimant (Evelyn Morrison) the widow, and, as such, the dependent of the deceased workman, Chester Lee Morrison, at the time of his death? The Board held against claimant on this issue and found that Morrison was a single man at the time of his death.

There are some undisputed facts which seem to us sufficient to determine this issue: Morrison was married to Beulah Hillman in Colorado, February 26, 1935. Beulah obtained a decree of divorce from Morrison November 8, 1938, which became final May 8, 1939. If we give full credence to his statement, that he was a married man July 15, 1939, it must follow that he had married some woman other than Beulah. The evidence shows, without dispute, that Morrison had taken rooms for himself and wife at

22½ East Park Street, being the Oakland Block; in Butte, February 27, 1939. Prior to going to Nevada City, they occupied a room in the Realty Block at 118 E. Broadway, Butte. Under such a state of facts and circumstances, the relationship between a man and woman, so holding themselves out as husband and wife, in apparent good faith, can not be called in question, impeached or disproven by statements made in their absence by a third person or interloper who asserts an intimate relationship with either one of such parties, either licit or illicit. The marriage to appellant (consensual though it be), once established, could no more be repudiated or abandoned than had it been solemnized in the usual ceremonial way. Such a marriage can be dissolved only by death or divorce.

In the recent case of *Nicholas et al. v. Idaho Power Company*, 63 Ida. 675, 125 Pac. (2d) 321, we quoted with approval from In re Mo-Se-Che-He's Estate, 188 Okl. 228, 107 Pac. (2d) 999, 1004, as follows:

"It has often been held that where a person marries within six months after procuring a divorce, such marriage may ripen into a valid common law marriage where the parties continue to live together as man and wife after the expiration of the six months' period. But this is purely because of the conduct of the parties after the expiration of the six months."

In the Nicholas case we also said: ". . . . even though there was a time impediment existing when the ceremonial marriage took place, after that impediment ceased, the 'mutual assumption of marital rights, duties or obligations' *continued* in good faith." The law leans to and presumes morality and good faith in the marital relation. *Mauldin v. Sunshine Min. Co.*, 61 Ida. 9, 97 Pac. (2d) 608, and cases cited.

Although the contract and consent marriage between Morrison and appellant, entered into July 10, 1937, was *absolutely void at the time,* the more reasonable rule seems to be that a continuance of the marital relation and assumption of its duties, after the impediment ceased, (decree of divorce became final) and Morrison was capable of contracting marriage, amounted to a consensual marriage, under the statute, and could not be assailed or avoided. (Sec. 31-201, I.C.A.; *Nicholas v. Idaho Power Co.*, supra; *Mauldin v. Sunshine Min. Co.*, supra; *Welch v. All Persons,*

78 Mont. 370, 254 Pac. 179; id., 85 Mont. 114, 278 Pac. 110.) Courts can not countenance lewdness nor can they judicially change the nature of human beings. Even the immoral have legal rights, sometimes in a sense referable to immoral life. It would neither be promotive of the public good nor advance either public or private morals for courts to deny judicial relief to those whose moral conduct has fallen below the generally recognized standards.

Having assumed and entered into the marital relation with appellant in Montana, the status thus established followed Morrison to Idaho and could not be shed like a garment on entering this state. (Sec. 31-209, I.C.A.; *Hilton v. Stewart,* 15 Ida. 150, 164, 96 Pac. 579; *Huff v. Huff,* 20 Ida. 450, 463, 118 Pac. 1080.) The statutes of Montana, dealing with consensual marriages, are in substance and effect the same as ours (Sec. 31-201, I.C.A.), except that the Montana statutes (Secs. 5724 and 5726, Rev. Codes, 1935) provide that "persons married without solemnization .... must jointly make a declaration of marriage", stating names, ages, residence, the fact of marriage, etc., and file the same with the county recorder, which was not done in this case. That statute, however, appears to be only directory and evidentiary and not an element of the "consent" constituting "mutual and public assumption of the marital relation" as required by the statute. Montana has a statute (Sec. 5697, Comp. Laws, 1935) which is identical with our section 31-203, and reads as follows:

"Consent to and subsequent consumption of marriage may be manifested in any form, and may be proved under the same general rules of evidence as facts in other cases."

So it would seem that the recorded declaration is not indispensable as a matter of proof.

The order appealed from is reversed and the cause is remanded to the Board, with directions to make findings and enter an order in accordance with views herein expressed. Costs awarded in favor of appellant.

Givens, C. J., and Budge, Morgan and Holden, J.J., concur.