(No. 7058. May 5, 1943.)

S. W. LEA and S. W. LEA, Administrator of the Estate of Nellie Cox Lea, deceased, Respondent, v. ELIZA GALBRAITH, GERTRUDE McNEE, MARIE McMINN, NELLIE CRABB, ALLIE SCOTT, SINA SMITH, EMMA FAIRBANKS, GEORGE STEPHENS and SALLIE HARMON, Appellants.

[137 Pac. (2d) 320.]

Frank A. Miller and Merrill & Merrill for appellants.

Ralph L. Albaugh and Errol H. Hillman for respondent.

AILSHIE, J.—July 1, 1906, Robert Cox and Nellie I. Stephens, both of Fremont County, intermarried. At that time Cox owned a homestead of 160 acres and later acquired other valuable real property. They cohabited together until Mr. Cox died intestate about March 17, 1931. December 4, 1931, decree of distribution of his estate was filed, showing the property to be community property, with the exception of the homestead above mentioned, which consisted of the "South West quarter of Section fifteen, Township seven North of Range Thirty-nine East of Boise Meridian" in Fremont County, decreed to be the separate property of Robert Cox, but a part of the residue of the estate. Mrs. Cox, as surviving wife of decedent was decreed "the entire residue of said estate." Mr. and Mrs. Cox had no children.

Silas W. Lea, or S. W. Lea, respondent, married Rosa Seaton at Mack's Creek, Missouri, September 9, 1900; they

lived together until October 17, 1909, and had three children, Wade, Wilma, and Winnie Lea. December 30, 1910, complaint for divorce was filed by Mrs. Lea, on the ground of desertion. Publication of legal notice, under Missouri statutes, for four successive weeks, was shown; and Lea's testimony discloses that he was served in Nebraska with the summons and other divorce papers. The action was "dismissed at cost of plaintiff" (Mrs. Lea). August 19, 1912. No proceeding was ever filed by Lea for divorce from Rosa Seaton Lea.

In 1917 Della Rosa Lea, purporting to be the same person as Rosa Seaton Lea entered into a remarriage with Devo L. Muggy; later divorce was granted and Rosa remarried the following persons, in order named: H. A. Berry (1926), a Mr. Couch (1937), and Charles Thomas Warford (1938). At various times Lea knew of the residence of his former wife and talked with her in 1937. He "always considered her being divorced" from him.

At Bozeman, Montana, August 18, 1932, Lea and Nellie Cox, widow of Robert Cox, deceased, intermarried. They resided together until her death, December 5, 1940; she died intestate. January 11, 1941, Lea filed petition ·for letters of administration, and was appointed administrator January 22d. August 28, 1941, petition was filed by Eliza Galbraith, Gertrude McNee, Maria McMinn, and Nellie Crabb, sisters and heirs at law of Robert Cox, deceased; they were called "The Cox Group", praying that a decree of distribution be made, decreeing "all that part or portion described in the inventory and appraisement . . . . to which said heirs of Robert Cox, deceased, are entitled." October 24, 1941, the first account, report and petition for distribution of the estate was filed by the administrator. The total value of the property received was given in the report and the order of the court as $25,713.85.

November 4, 1941, the Cox group filed their objections to the distribution of the estate to S. W. Lea, on the ground that Lea is not the surviving husband of Nellie Cox Lea, deceased; and that he is now and has been since September 9, 1900, the husband of Rosa Lea. November 13th the Cox group filed additional objections to the distribution of the estate to Lea, alleging:

"That any assignment or assignments in favor of said S. W. Lea from the alleged kindred of Nellie Cox Lea, deceased, was obtained by misrepresentation and fraud, and

that the said Nellie Cox Lea, deceased, at the time of her death was a resident of the State of California, residing in the City of Long Beach."

November 26, 1941, an agreement and assignment was made between the Cox and Stephens groups (the latter being composed of Allie Scott, Sina Smith, Emma Fairbanks, George Stephens and Sally Harmon, sisters and brother of Nellie Cox Lea, deceased), desiring "the earliest possible closing and distribution" of the estate in California and Idaho and specifically agreeing that the estate shall be divided and distributed as follows:

"An undivided one-half ($\frac{1}{2}$) to the Stephens group and the other undivided one-half ($\frac{1}{2}$) to the Cox group. The division of each half as between the members of each group shall be according to the laws of descent of the place where the property is distributed. Should there be any additional heirs-at-law (connected with either group) not now a party hereto, they may at any time hereafter (with the consent of the members of their own group only) join in the execution of this agreement and thereafter be entitled to the benefits and burdens of the particular group to which they belong. Each party hereto mutually assigns, transfers, grants, and conveys to each of the other parties hereto such shares of his or her interest and title (from whatever source derived) to the assets of said estate as may be necessary to accomplish distribution and payment according to this agreement."

The agreement was filed January 15, 1942.

January 29, 1942, the Probate Court found that Lea was not the surviving husband of Nellie Cox Lea, deceased, and not entitled to any distributive share of her estate; and that the estate should be distributed to the heirs of Nellie Cox Lea, deceased, and Robert Cox, her pre-deceased husband. From this judgment Lea appealed to the District Court, both as administrator of the estate and as sole heir at law of Nellie Cox Lea, deceased. The case was tried de novo in the District Court, May 21, 1942. In that court judgment was entered June 30th, reversing the order of the Probate Court and remanding the cause to that court, with direction "to distribute to the said S. W. Lea all of the residue of the estate of Nellie Cox Lea, deceased." Notice of appeal to the Supreme Court was filed July 29, 1942, by the Cox and Stephens groups.

The only material issue in the case is the question of the validity of the marriage between Silas W. Lea and Nellie Cox Lea.

The rule is firmly established in this state, to the effect that all reasonable presumptions must be indulged in favor of the regularity and legality of a marriage, regularly solemnized; and that the burden of removing such presumption is cast upon the party attacking the validity of the marriage, "to show by clear, cogent and satisfactory evidence," that a legal impediment to such a marriage existed at the time of the solemnization thereof. (*Mauldin v. Sunshine Min. Co.*, 61 Ida. 9, 19, 97 P. (2d) 608; *Smith v. Smith*, 32 Ida. 478, 185 P. 67; Estate of Tormey, 44 Ida. 299, 256 P. 535; *Huff v. Huff*, 20 Ida. 450, 118 P. 1080; *Nicholas v. Idaho Power Co.*, 63 Ida. 675, 125 P. (2d) 321, 324; *Morrison v. Sunshine Min. Co.*, 64 Ida. 6, 127 P. (2d) 769.)

The decision of this case turns upon this marriage between appellant Lea and Nellie Cox. If he was still the husband of Rosa Seaton Lea, of course he was incapable of entering into the marriage contract in relation to Nellie Cox. That he had been previously married to Rosa Seaton, is admitted. It is also admitted that he entered into the marriage relation with Nellie Cox (either lawfully or unlawfully). There is no positive, affirmative evidence that Rosa Seaton did not, at some time and place, procure a divorce from Silas W. Lea. It is admitted, however, that Lea never took affirmative action himself against Rosa Seaton Lea to procure a divorce. He says, however, that he understood and was informed that she had procured a divorce and that she had remarried. It is established by abundant affirmative evidence, and is admitted, that she was very much remarried in the course of subsequent years, as above disclosed.

Rosa Seaton was not produced as a witness. Lea was called, however, and testified, among other things, as follows:

"Q. And on what do you base the statement that she was not your wife?

"A. From the fact that *I have always considered her being divorced from me.*

"Q. And why did you consider her divorced?

"A. *From the fact of her remarrying,* and—

"Q. That was the only reason?

"A. No.

"Q. Beg pardon?

"A. And by her father and mother, and by my—*by our children telling me that she had a divorce and had remarried.*

"Q. And was any of that based upon the fact that she had filed a proceeding against you in Camden County, Missouri?

"A. Not necessarily.

"Q. You relied upon statements of members of the family, did you that she had remarried?

"A. Yes, sir."

(Italics supplied.)

"Q. Now, who told you, if you can remember, Mr. Lea, of the marriage between Devo L. Muggy and your former wife, Della Rosa Seaton?

"A. William Seaton.

"Q. Who is he?

"A. Her father.

"Q. Do you mean—

"A. Rose Seaton's father.

"Q. Who else told you that?

"A. And Mary Seaton, her mother; and my brother, Gilbert C. Lea; and my daughter, Wilma Lea.

"Q. And when you say your daughter—

"A. Our daughter.

"Q. By that, do you mean the daughter of you and Rosa Seaton?

"A. Yes.

"Q. Have you at any time heard about a child being born as the issue of the marriage between Devo L. Muggy and your former wife, Della Rosa Seaton?

"A. Yes sir.

"Q. And from whom did you receive that information?

"A. Della Rosie Seaton told me *in nineteen and thirty-seven, that she had a son by Mr. Muggy.*" (Italics supplied.)

In the face of these admissions and the testimony of respondent, the question recurs: Have appellants introduced

sufficient evidence and made sufficient proofs to rebut or overcome the presumption, that Rosa Seaton Lea had obtained a divorce prior to her marriage to Muggy? It seems to us that, instead of removing or overcoming the presumption of law arising from the facts and circumstances of the case, the evidence very strongly tends to sustain and corroborate the presumption.

Assuming, as we must, until the contrary is proven, that these parties were acting honestly and innocently, and complying with the law, (*Mauldin v. Sunshine M. Co.*, supra; *Huff v. Huff*, supra) it seems but reasonable and fair to assume, that the first wife, Rosa Seaton Lea, having commenced an action for divorce and served her husband with the necessary papers, and his having defaulted, a decree of divorce had thereupon been granted. Furthermore, it seems that Lea might have very well assumed, and taken it for granted, that his former wife, Rosa Seaton Lea, had procured a divorce from him, when he was so informed by their three children, Lea's brother and Rosa's father and mother. He might have also assumed that she would not have remarried in violation of law and incurred the penalties for bigamy, without being first divorced. The test, of course, must be made upon the facts and presumptions available, as of the date of Lea's marriage with Nellie Cox, August 18, 1932.

There is no disputing the fact, that Lea knew his former wife had remarried and that he had seen and talked with her prior to his marriage to Nellie Cox; and that he had also seen her husband Muggy. At the time of his marriage to Nellie Cox, Lea had no knowledge (according to the proofs) of the dismissal of Rosa Seaton Lea's divorce action, and as we said in *Nicholas v. Idaho Power Co.*, 125 P. (2d) 321, 325: "The courts of the forty-four counties of the state were open to them [her] to prosecute a divorce action during all this time."

Appellants lay much stress on the fact that Lea stated, in his application for a Montana license to marry Nellie Cox, that he had "not been previously married", as evidence that "Lea made this false statement . . . with a definite purpose, and obviously it was to defraud . . . . Nellie Cox, into a marriage which Lea must have known at that time was illegal. Any presumption which he now seeks to claim supporting such a marriage obviously is dispelled."

It is passing strange that Lea could have forgotten or overlooked the fact, that he had been married more than twenty years and, in the meanwhile, had reared three children; and that such incidents made so slight an impression on his mind that he had totally forgotten them. Various conjectures may be conjured and, in any view, the conduct merits severe censure. But it does not appear that it would have made any difference in the issuance of the license and subsequent marriage, had Lea made the true statement, that he had been "previously married"; nor would it have rebutted the existing presumptions of divorce herein enumerated. The correct statement that Nellie Cox "has been previously married" was .made, but that seems to have in no way delayed issuance of the license. Clearly, the statement, though false, did not influence the issuance of the marriage license or impair the marriage ceremony or contract.

Appellants assign as error the ruling of the court in rejecting their proffered exhibit No. 9, which is an exemplified copy of a "Complaint for Accounting and Declaratory Relief", filed in the Superior Court of Orange County, California, March 11, 1942, by "Rosa 𝒞𝑜𝑥𝑒𝑙𝑙, also Seaton known as Rosa Lea, Plaintiff, v. Ruth P. Pratt et al., Defendants." The complaint contains the allegation by Rosa Seaton (𝒞𝑜𝑥𝑒𝑙𝑙) as follows:

"The plaintiff now is and at all times since the said 9th day of September, 1900, been married to, and the wife of the said S. W. Lea, also known as Silas W. Lea, and also known as Silas Lea."

The court properly rejected this exhibit, for the reason that it was hearsay, ex parte and made by a stranger to this proceeding, also self-serving (*Westfield v. Warren*, 8 N. J. Law 249, 251) ; furthermore, it was clearly *post litem motam* and properly excluded on that ground. (22 C. J., p. 258, sec. 255, n. 72; 31 C. J. S., p. 975, sec. 228, n. 2; 20 Am. Juris., sec. 468, p. 411; In re Frey's Estate, 207 Ia. 1229, 224 N. W. 597, 599; see also annotation, 29 A. L. R., 372.) It is contended, however, by appellants, that it was admissible under the pedigree rule. The statements contained in this exhibit do not fall within the purview of that rule. (20 Am. Juris., p. 415, sec. 473.)

The complaint, contained in this proffered exhibit, shows

on its face that Mrs. Rosa Seaton Lea-Muggy-Berry-War-ford-Couch was so abundantly supplied with nuptial nomenclature that she sometimes became confused as to which was her correct name. When her "Complaint for accounting and declaratory relief" was drawn, she evidently gave her name, to her lawyer, as *Couch*. Later the word "Couch" was crossed out and the word "Seaton" inserted. The filing indorsement on the complaint was: "Rosa Couch, also known as Rosa Lea, Plaintiff." The ex parte post litem motam statement of one, who skips some four husbands and asserts that, during the meanwhile, she has all the time been the wife of a prior husband, is scarcely worthy of credence.

If it was a fact, as contended by appellants, that Rosa Seaton Lea-Couch was still the wife of S. W. Lea, it was their privilege to produce her as a witness or procure her deposition, and thereby enable respondent to cross-examine her. Appellants knew that she was living and apparently knew of her whereabouts. The burden was on them to produce her testimony. (*Idaho Power Co. v. City of Buhl*, 62 Ida. 351, 360, 111 P. (2d) 1088; *Coeur d'Alenes Lead Co v. Kingsbury*, 59 Ida. 627, 634, 85 P. (2d) 691; 20 Am. Juris., secs. 183, 184, pp. 188, 191.)

Finally, it is argued that, if it be concluded that Lea is the "surviving husband" of Nellie Cox Lea, the court should have ordered distribution of her estate, under subd. 8 of sec. 14-103, instead of under subd. 4 of that section. The statute reads, inter alia:

"When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it is succeeded to, and must be distributed, unless otherwise expressly provided in this code, subject to the payment of his debts, in the following manner:

. . . .

"4. If the decedent leave a surviving husband or wife and neither issue, father nor mother, the whole estate goes to the surviving husband or wife.

. . . .

"8. If the decedent be a widow or widower and leave no kindred, and the estate, or any portion thereof, was common property of such decedent, and his or her deceased spouse, while such spouse was living, such common property shall go to the father and mother of such deceased spouse,

in equal shares, or if either be dead, then to the other. If there be no father nor mother, then such property shall go to the brothers and sisters of such deceased spouse, in equal shares, and to the lawful issue of any deceased brother or sister of such deceased spouse, by right of representation.

. . . ."

The answer to that contention is that, having determined that the marriage was valid, it follows that Lea is "the surviving husband" of Nellie Cox Lea and therefore her "whole estate goes to the surviving husband." So, under the statute, the "whole estate" is disposed of under subd. 4 thereof; and we never reached a distribution under, or construction of, subd. 8. It makes no difference whether Nellie Cox continued to be the "widow" of Cox after his decease and her marriage to Lea. She, nevertheless, left only *one* "surviving husband", namely, Lea.

Appellants rely on the case of In re McArthur's Estate, 210 Cal. 439, 292 P. 469, 72 A. L. R. 1318, as supporting their contention, that the distribution should have been made under subd. 8 of sec. 14-103. We are unable to follow the logic and reasoning of that case as applied to our statute.

Nellie Cox Lea had a right to dispose of all her property by will to whomsoever she pleased. I. C. A., secs. 14-301, 14-302, 14-113; failing to do so, it descended under subd. 4 of sec. 14-103.

We conclude the judgment of the District Court should be affirmed, and it is so ordered. Costs awarded to respondent.

Holden, C.J., Givens, and Dunlap, JJ., concur.

Budge, J., dissents.