675 P.2d 27

Richard L. NELSON, Jr., Claimant-Respondent,

v.

Forrest D. PUMNEA, and Aetna Insurance Company, Surety, Defendants-Appellants.

Nos. 14792, 14910.

Supreme Court of Idaho.

Dec. 7, 1983.

Rehearing Denied Feb. 8, 1984.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants.

Michael J. Verbillis, Coeur d'Alene, for claimant-respondent.

SHEPARD, Justice.

This is an appeal by a surety, from an order of the Industrial Commission denying a motion to vacate a default judgment entered against the employer, who failed to appear at an Industrial Commission hearing.[1] We reverse and remand.

The record indicates the following particulars relating to claimant Nelson and the circumstances preceding the default and entry of an award in the instant case. Claimant Nelson's physical problems date back to at least February 1977, when he injured his left knee during his employment with another Idaho employer. As to that injury, he negotiated a lump sum settlement with the then employer-surety, which settlement was approved by the Industrial Commission on June 4, 1980. Thereafter, Nelson was working as a heavy equipment operator for the employer herein, Pumnea, in Idaho, Washington, and Montana. On October 30, 1980, he again injured his left knee, while working in Montana. Pumnea had workmen's compensation coverage in all three states. Claimant Nelson filed a claim for compensation in Montana, and the Montana State Compensation Fund paid him benefits from October 31, 1980 through April 1, 1982, at which point the Montana fund determined that the damage attributed to the October 1980 accident had healed and that fund therefore discontinued compensation.

Despite the situs of the injury being in a foreign state, under the provisions for extraterritorial coverage, I.C. §§ 72–217 and –218, claimant applied for a hearing before the Idaho Industrial Commission, claiming benefits relating to the October 1980 injury. On April 20, 1982, a copy of that application for hearing was served upon surety's local agent, who claims to have received it on April 23, 1982. In an affidavit made part of surety's application to set aside the default, an adjuster for the surety stated she was at the time somewhat confused, since the application related to a relatively old injury in another jurisdiction and the insurance carrier was named as "State Compensation Insurance Fund, Helena, Montana." Nevertheless, she telephoned claimant's attorney, who informed her that the claim was being transferred to Idaho and that the surety should file a response to the application. After unsuccessfully attempting to contact her claims manager, the adjuster set the application aside, intending to make further inquiry. During the following week, surety's local agent moved its offices to a different location, the adjuster was out of town on business, and the document was temporarily misplaced or forgotten. On May 26, the

---

1. "I.C. § 72–307 provides: "... [T]he jurisdiction of the employer shall, for the purpose of this law, be the jurisdiction of the surety, and that the surety shall in all things be bound by and subject to the orders, findings, decisions, or awards of the commission rendered against the employer for the payment of compensation."

adjuster discovered that the application for hearing had not been acted upon and immediately contacted surety's attorneys and the insured employer. According to the adjuster's affidavit, the employer explained to her that he had not filed an employer's report of accident with the Industrial Commission in Idaho, since he knew that claimant was receiving benefits in Montana. The adjuster then contacted the Montana Industrial Commission and obtained its files on claimant's case.

Under the rules of the Idaho Industrial Commission a defendant has 20 days from the date of service of the application for hearing to file an answer with the Industrial Commission. When no answer was filed on the due date, the commission, on May 17, 1982, entered a default order against the employer. Thereafter, on September 29, 1982, the commission entered an order and award in favor of claimant.

On June 3, 1982, 18 days after the default was entered, surety's attorney filed a motion for an order setting aside the default and submitted in support of said motion an affidavit by the adjuster explaining the circumstances surrounding the non-filing of an answer to claimant's application for hearing, together with extensive information, from the files of the Montana Compensation Insurance Fund and the Idaho Industrial Commission, which disclosed the history of claimant's knee injuries.

On July 26, 1982, the Idaho Industrial Commission entered its order denying surety's motion to set aside the default and noted, "It is fundamental that in order to set aside a default, the party moving to set the default aside must show mistake, inadvertence, surprise, or excusable neglect and must set forth facts establishing a meritorious defense," citing *Fisher v. Bunker Hill Co.*, 96 Idaho 341, 528 P.2d 903 (1974). The commission gave the following reason for refusing to set aside the default judgment:

"The Commission concludes that the foregoing facts do not establish mistake, inadvertence, surprise or excusable neglect on the part of the insurance adjus-

tor. It is apparent that the adjustor treated the Application for Hearing as though it was a claim for compensation and proceeded with an investigation. It was not treated as though it was an Application for Hearing, which required an Answer to be prepared and filed by the attorney for the employer or surety. It was not handled in a manner which would be expected of a reasonable and prudent person."

■ We have consistently held that the factual findings of the Industrial Commission will not be overturned on appeal unless they are unsupported by substantial and competent evidence. *Green v. Columbia Foods, Inc.*, 104 Idaho 204, 657 P.2d 1072 (1983); *Case of Graham*, 103 Idaho 824, 654 P.2d 1377 (1982). Further, the Industrial Commission will be the arbiter of conflicting evidence. *Case of Graham, supra; Callantine v. Blue Ribbon Linen Supply*, 103 Idaho 734, 653 P.2d 455 (1982); *Bradshaw v. Bench Sewer Dist.*, 90 Idaho 557, 414 P.2d 661 (1966). In the instant case, however, the record before us is devoid of any evidence upon which we might sustain the commission's finding as to the reason for the surety's inaction on Nelson's application for hearing. Because that holding of the commission is unsupported as a matter of law, it is hereby reversed. *See Bush v. Bonners Ferry School Dist. No. 101*, 102 Idaho 620, 636 P.2d 175 (1981); Idaho Const. art. 5, § 9; I.C. § 72–732(4).

We now turn to the record to determine whether it discloses that in the instant case there were excusable neglect *and* meritorious defenses. *See* I.R.C.P. 60(b)(1).

■ The law abhors a default judgment, and hence we are inclined to give the benefit of any doubt to the party against whom default has been entered, in accordance with our long-standing policy favoring a decision on the merits of the case over disposition upon a procedural technicality. *Garren v. Saccomanno*, 86 Idaho 268, 385 P.2d 396 (1963); *Davis v. Rathbun*, 79 Idaho 482, 321 P.2d 609 (1958); *Orange Transportation Co. v. Taylor*, 71 Idaho 275, 230 P.2d 689 (1951). We note that we have for

our review all of the evidence which the commission itself had before it, *i.e.*, a written record, but no testimony. Here, contrary to the usual situation, the agent of the surety had neither a file nor any notification from the employer of a compensable accident. The accident situs was not within Idaho and the therein named "insurance carrier" was unusual. Hence, the agent for the surety had in its possession a single document which, during the course of a move of the office from one location to another, could lead even a reasonable and prudent person into an oversight. *Hamilton v. Edell,* 67 F.R.D. 18 (E.D.Pa.1975); *Mead v. Citizen's Automobile Inter-Insurance Exchange,* 78 Idaho 63, 297 P.2d 1042 (1956). There is no demonstration of any prejudice to the claimant by the 18-day delay in receiving the response of the surety to the application for hearing, *see Johnson v. Noland,* 78 Idaho 642, 308 P.2d 588 (1957); *Dellwo v. Petersen,* 34 Idaho 697, 203 P. 472 (1921), and we are appreciative of the candor of claimant's counsel in this regard during oral argument. In the instant case, we hold that the surety has demonstrated excusable neglect.

Any meritorious defense on the part of the surety is essentially that none of the current damage can be causally connected to the October 1980 accident. In the motion to set aside the default, it was alleged that claimant injured his knee by an accident in February 1977; that an injury occurred in October 1980 from which arose the instant claim; that claimant was treated for damage to the same knee following an automobile accident in May 1981; that the same knee was injured in August of 1981; and that he dropped a stove on the same knee in February 1982, again necessitating treatment. Which of those incidents caused any or all of the damage to claimant's knee, and whether, as asserted by the claimant, the post-October 1980 injuries were caused because of his already weak knees, are questions needful for determination. If, as the surety asserts, none of the current damage is causally connected to the October 1980 accident, a defense to liability exists. *Green v. Columbia Foods,* 104 Idaho 204, 657 P.2d 1072 (1983); *Callantine v. Blue Ribbon Linen Supply,* 103 Idaho 734, 653 P.2d 455 (1982); *Dean v. Dravo Corporation,* 95 Idaho 558, 511 P.2d 1334 (1973). Hence, for purposes of the motion to vacate the default, we hold the surety has established meritorious defenses, which it should be entitled to litigate.

■ The surety also appeals from the commission's computation of benefits. That issue would only be necessary to our decision if we were affirming the order refusing to set aside the default. Nevertheless, we note that the commission appears to have based its calculation of the award solely upon claimant's oral testimony, which was seriously contradicted by documentary evidence relating to time slips and by the claimant's own accounting on his Montana compensation application of his earnings for the previous four pay periods. Therefore, upon remand, the commission is instructed not to give any res judicata effect to its previous calculation of claimant's award.

If the commission on remand makes an award of compensation to claimant, it is instructed to so award benefits nunc pro tunc as of September 29, 1982.

Reversed and remanded for additional proceedings in accordance herewith. No costs allowed.

DONALDSON, C.J., and McFADDEN, J. Pro Tem., concur.

BAKES, J., concurs in the result.

BISTLINE, Justice, concurring and dissenting.

In *Bunn v. Bunn,* 99 Idaho 710, 711–12, 587 P.2d 1245, 1246–47 (1978), the Court stated that which has ever been my view, relating to over-technical application of statutes or rules of procedures:

"In addressing the effect of noncompliance with procedural statutes and rules, the Court in *Stoner v. Turner,* 73 Idaho 117, 121, 247 P.2d 469, 471 (1952), said:

'The object of statutes and rules regulating procedure in the courts is to

promote the administration of justice. Those statutes and rules which fix the time within which procedural rights are to be asserted are intended to expedite the disposition of causes to the end that justice will not be denied by inexcusable and unnecessary delay. But, except as to those which are mandatory or jurisdictional, procedural regulations should not be so applied as to defeat their primary purpose, that is, the disposition of causes upon their substantial merits without delay or prejudice.'

Such philosophy again found expression in the Idaho Rules of Civil Procedure. Rule 1, as first promulgated, stated the following, which continues in the rule as now amended:

'These rules govern the procedure in the district, probate and justices' courts in the state of Idaho in all actions and proceedings of a civil nature whether cognizable as cases at law or in equity, with the exceptions stated in particular rules and in rule 81. They shall be liberally construed to secure the just, speedy and inexpensive determination of every action and proceeding.'

Rule 1, I.R.C.P." (Footnote omitted.)

In *Sherwood & Roberts, Inc. v. Riplinger,* 103 Idaho 535, 650 P.2d 677 (1982), Justice McFadden and myself in separate dissenting opinions both strongly deplored the Court's arbitrary refusal to follow the precepts of *Bunn v. Bunn,* and contrarily based its decision to uphold the entry of a default there on its supposed deference to the discretion of the trial court:

"The right to grant or deny relief under I.R.C.P. 60(b) is a discretionary one. Thus, absent a showing of arbitrary disregard for the relevant facts and principles of law by the court below, this Court will affirm the lower court's decision to deny or grant relief under I.R.C.P. 60(b). *Johnston v. Pascoe,* 100 Idaho 414, 419, 599 P.2d 985, 990 (1979); *Lisher v. Krasselt,* 96 Idaho 854, 857, 538 P.2d 783, 786 (1975). We see no such arbitrary disre-

gard in the present case, and therefore affirm the order denying relief."

*Sherwood, supra* 903 Idaho at 541, 650 P.2d at 683.

It is more than interesting to note that the three members of the Court who comprised the majority in that case are in the majority in today's opinion which sets aside a default which the Industrial Commission in its discretion refused to set aside on the showing made. Counsel in the *Sherwood* case will be astounded to learn from the Court just fourteen months later that:

"The law abhors a default judgment, and hence *we are inclined to give the benefit of any doubt to the party against whom default has been entered,* in accordance with our long-standing policy favoring a decision on the merits of the case over disposition upon a procedural technicality." (Emphasis added.)

It is so evident from the flavor of the majority opinion that the Court today retries for itself the surety's application to set aside the default that the point need not be belabored at length. For instance, missing from today's opinion is the *Sherwood* language that this Court will affirm "absent a showing of arbitrary disregard for the relevant facts and principles of law ...." 103 Idaho at 541, 650 P.2d at 683. Instead, "We now turn to the record to determine whether it discloses that in the instant case there were excusable neglect *and* meritorious defense." Following that preamble, the majority finds both a showing of excusable neglect and a meritorious defense. The Commission, however, on the same record, did *not* find excusable neglect, and that should be the end of it, unless the majority is prepared to say—which it avoids doing—that the Commission arbitrarily concluded that the surety's conduct "was not ... in a manner which would be expected of a reasonable and prudent person."

Reciting the general rule which appertains to commission findings, the majority gives us only this, to me incomprehensible, statement, and the very gist of its rationale:

"In the instant case, however, the record before us is devoid of any evidence upon which we might sustain the commission's finding as to the reason for the surety's inaction on Nelson's application for hearing."

The Commission, as I read the same record, held *that there was no reason* advanced by the surety which supported a claim of *excusable* neglect. The majority is thus seen as blatantly deducing from the record "that the surety has demonstrated excusable neglect." The Commission held exactly the opposite, and the Court this day sees fit to usurp the fact-finding function of the Commission. That this Court continually does such things on occasion can only lend to uncertainty in the law.

Moreover, as pointed out above in the *Bunn v. Bunn* excerpt, case law and the Court's rules of procedure govern the procedure in the district courts and lower courts of the state. Today we review not court action taken below, but an administrative decision of the Industrial Accident Commission. It has promulgated its own rules and regulations which govern procedures before it:

### "VIII.

### "DEFAULTS

"(a) When a party against whom an award or judgment for affirmative relief is sought has failed to plead or otherwise defend, within the time prescribed by these rules, the Commission shall enter his default. *Said entry of default shall be made whether by motion of the parties seeking the entry or by the Commission on its own motion.*

"(b) Following the entry of such default by the Commission, the Commission shall then set the matter for hearing as in other cases, *and the party seeking a default award or judgment shall be required to establish a prima facie case to support his application for such award or judgment.* Proof of medical facts may be made by the contents of the Board's file.

"(c) For good cause shown the Commission may set aside an award or judgment by default. An application to set aside the award or judgment must be made within 20 days of the date thereof."

Industrial Commission, "Rules of Practice and Procedure Under Workmen's Compensation Law," Effective January 3, 1972.

In this case the Commission itself entered the default of the surety. It also complied with its own rules and required the claimant to establish his case, which was done. In the past ten years the Commission has handled four hundred twenty thousand one hundred twelve (420,112) claims, only a few of which have reached this Court. In medical, causation, and disability rating matters, this Court has on many occasions recognized the expertise of the Commission. The cases are legion in number and citation would be superfluous. Apparently unnoticed by the other members of this Court, the Commission not only has its own rules and regulations, and the expertise which I mention, but it also has expertise in the administration of claims and the application of its own rules and regulations. Based on that expertise, which in only ten years encompasses the handling of over 420,000 claims, practically all of which were against sureties for employers, it without doubt has acquired an expertise in the manner claims are properly handled by sureties. Not to be forgotten is the extremely significant factor that the industrial-oriented member of the Commission has an extensive prior background in the surety business. Against that backdrop of experience and expertise the majority of this Court contentedly substitutes its collective judgment for the collective judgment of the Commission. I cannot comfortably do so.

Although I applaud the majority opinion for its ready compassion in directing the Commission to "award benefits nunc pro tunc" as of fourteen months ago, a doubtful legal proposition, if it deigns to make an award to claimant, I do not think that the scant amount of interest on any award made is the equivalent of granting costs and expenses where a default judgment is

set aside. Older practitioners will remember that where the district courts did find excusable neglect, the entry of an order setting aside the default was conditional on payment of costs and expenses. Here, unnoticed by the majority, counsel for the claimant, who could not conscionably or ethically agree to the vacating of his client's award (judgment), requested of the Commission only that if it did set aside the award and re-open the case, costs should be awarded. The majority of the Court, in moving into the Commission's territory, do nothing in that regard—which in my judgment heaps travesty upon usurpation.

In closing, according to my recollection, just in the last thirty months or so, this Court, or at least some members thereof, have come down with a holding that even on a written record this Court may not properly substitute its findings for those of the Commission. Today the Court does just that—thereby completely breaking with all precedent.