714 P.2d 1

Edna SEESE, Claimant-Appellant,

v.

**IDEAL OF IDAHO, INC., Employer, and Fireman's Fund Insurance Co., Surety, Defendants-Respondents.**

No. 15655.

Supreme Court of Idaho.

Dec. 13, 1985.

Rehearing Denied Feb. 10, 1986.

Emil F. Pike, Jr., Twin Falls, for claimant-appellant.

John W. Barrett, Boise, defendants-respondents.

SHEPARD, Justice.

On April 4, 1978, claimant was employed at Ideal of Idaho, a trailer manufacturing business, stapling rubber and plastic around cabinets. While lifting a cabinet she suffered an injury which was diagnosed as a back strain.

She consulted a chiropractor who referred her to a neurologist for evaluation and subsequent treatment. That doctor released the claimant to "light" work January 2, 1980. Claimant was compensated for total temporary disability until approximately September 1979, and she filed an application in March 1980 for a hearing before the Industrial Commission. A hearing was held before a referee.

At that hearing the record indicates that in April 1981 claimant was employed as a hotel maid, working approximately 20 hours per week vacuuming, changing linen, and cleaning bathrooms. As of the hearing date claimant earned $3.35 per hour, the then minimum wage.

The referee also considered the deposition testimony of claimant's treating neurologist, Dr. Curran, a psychologist and vocational expert, Dr. Bronson, an orthopedic surgeon, Dr. Taylor, a neurologist, Dr. Wilson, and the testimony of a field consultant with the Industrial Commission, Rehabilitation Division. Various medical reports were admitted into evidence.

The medical testimony was reasonably consistent to the effect that claimant suffers a permanent impairment of five percent of the whole person due to pain, which it was evidently assumed resulted from the industrial accident. However, Dr. Wilson, a neurologist, testified that the type of back injury suffered by claimant is self-healing, and that a myelogram, a CT scan, and EMG tests of the claimant were all negative. He also testified that the pain she was experiencing could well be due to emotional stress factors in her personality makeup. In general, the medical evidence indicated no anatomical cause for the pain suffered by claimant.

However, as to the extent of claimant's permanent partial disability, the testimony was conflicting. Bronson, the psychologist, opined that claimant suffered from a 30 to 40 percent permanent partial disability. As indicated above, Wilson, the neurologist, indicated the injury was of the self-healing type and that all tests were negative. Jordon, the field consultant with the Industrial Commission, Rehabilitation Division, opined that claimant could return to the same type of work as she engaged in prior to the industrial accident, and that claimant suffered no reduction in her wage-earning capacity.

The referee found that "based on [claimant's] continuing back pain, she has a permanent partial impairment equal to five percent of a whole person." As to her permanent partial disability, the referee found as follows:

## "IX

"At the time of her accident on April 4, 1978, the Claimant was forty-seven years old. She has an eighth grade education. Her work experience prior to the accident includes jobs in which she did finish work on trailers, made window frames, drove a pilot car during the moving of mobile homes, and did maid work at a motel. Based upon the record as a whole, considering the Claimant's impairment and the nonmedical factors, including but not limited to her age, education work experience, and training, the *Claimant has not established that she suffered a permanent partial disability in excess of 5% of a whole person as a result of her accident of April 4, 1978.*" (Emphasis added.)

The Industrial Commission adopted the referee's findings of fact and conclusions of law, and entered its decision requesting permanent partial disability of only five percent of the whole person. This appeal is taken therefrom, with the claimant asserting either reconsideration by the Commission or a directed award for permanent partial disability of 30 to 40 percent of the whole person.

Our standard of review is well established. This Court is authorized to reverse a decision of the Commission only when the decision is unsupported by any substantial competent evidence or is not supportable as a matter of law. ID. CONST. art. 5, § 9; I.C. § 72–732. Appellate review of Commission decisions does not entail a *de novo* determination of fact. *Graham v. Larry Donohoe Logging,* 103 Idaho 824, 654 P.2d 1377 (1982). The weight to be accorded to evidence is within the province of the Commission. *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1984).

The question presented is whether there is substantial competent evidence supporting the decision of the Commission that claimant's permanent partial disability did

not exceed a rating of five percent of the whole man, and thus that the disability rating did not exceed the impairment rating.

The burden of proof is upon the claimant to prove disability in excess of his impairment rating, although expert testimony on this issue need not be presented. *Bennett v. Clark Hereford Ranch*, 106 Idaho 438, 680 P.2d 539 (1984). The test for such determination is not whether the claimant is able to work at some employment, but rather whether the physical impairment, taken in conjunction with nonmedical factors, has reduced the claimant's capacity for gainful activity. *Id.* In that determination, I.C. § 72–425 requires the Commission to take into consideration nonmedical factors such as age, sex, education, and economic and social environment.

The record indicates that the Commission considered the effect of the required nonmedical factors as bearing upon claimant's ability to engage in gainful activity. Those factors were incorporated into the findings of fact. We further note that although not utilized by the Commission, a mathematical comparison of pre and post-injury wages is evidence of an injured worker's ability to engage in gainful activity. *Baldner v. Bennett's, Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982). Such a mathematical comparison is not in and of itself sufficient to satisfy the strictures of I.C. § 72–425. In the instant case, the testimony of the claimant indicated pre-injury she was earning $3.40 or $3.45 per hour, and post-injury was earning $3.35 per hour. Contrary to claimant's assertion that the referee and Commission concluded the claimant had suffered no reduction in her wage-earning capacity, the Commission's ruling rather is that claimant's ability to engage in gainful activity has been reduced by five percent.

Claimant's complaint of chronic back pain and inability to work beyond five hours per day were met with testimony that there was no anatomical cause for her pain, no physical evidence of injury, and that the large bulk of her complaints are independent of the effects of the injury and attributable to other factors.

We hold there is substantial competent evidence supporting the decision of the Commission. We have considered claimant's other assertions of error and find them to be without merit. The decision of the Commission is affirmed.

Costs to respondents.

No attorney fees on appeal.

DONALDSON, C.J., and BAKES, J. concur.

BISTLINE, Justice, dissenting.

The majority's opinion treats the facts of this case in an altogether unsatisfactory and cursory manner. I will proceed, therefore, with a fuller statement of the facts and follow with a discussion of the logical inconsistencies of the decisions of the majority and the Commission.

### FACTS

In August 1977 Edna Seese was employed by Ideal of Idaho, which is in the business of manufacturing trailers. Mrs. Seese's job there involved stapling rubber and plastic around the cabinets in the trailers. On April 4, 1978, while lifting a cabinet in the course of her employment, Mrs. Seese suffered an injury to her back. Initially, she was treated by Dr. Modenhauer, a chiropractor. He referred her to Dr. Sidney Garber, an orthopedist. Dr. Garber referred her to Dr. Roger Curran, a neurologist, for evaluation, and he subsequently treated her.

Dr. Curran released Mrs. Seese to return to "light" work beginning January 2, 1980. The defendants admitted that Mrs. Seese was totally and temporarily disabled until about mid-October 1979, but they denied that she was temporarily disabled after that. Based on Dr. Curran's testimony, however, the referee found that Mrs. Seese was unable to work in October 1979 and that she has established that she was totally disabled through January 1, 1980.

Mrs. Seese was employed as a motel maid beginning in April 1981. After three to four months she left that job and moved to Twin Falls. She moved back to Payette and began working as a motel maid again in October 1982. That job is part-time, requiring approximately twenty hours per week. Her duties as a motel maid include vacuuming, changing linens, and cleaning bathrooms.

Although Mrs. Seese was released for "light" work, and has returned to work, she continues to have back pain. She has undergone a number of tests, but the referee found that the doctors who have examined Mrs. Seese have not found an anatomical cause for her pain. Nevertheless, the referee held that the medical evidence established that, based upon her continuing back pain, Mrs. Seese has a permanent partial *impairment* equal to five percent of a whole person.

Mrs. Seese asserts that her permanent partial *disability* is greater than five percent of a whole person. She presented the testimony of Dr. William Bronson, a psychologist who evaluates disabilities. Dr. Bronson testified that as a result of her accident of April 4, 1978, Mrs. Seese suffered a permanent partial *disability* of 30 percent to 40 percent of a whole person. In reaching that opinion, Dr. Bronson relied on the fact that Dr. Curran had released Mrs. Seese to return to "light" work, and that based upon medical testimony in the case, Mrs. Seese is incapable of performing "medium" or "heavy" work.[1] Thus, Dr. Bronson concluded that Mrs. Seese has a 30 percent to 40 percent permanent partial *disability* because she is now prevented from doing "medium" work; prior to her injury, Mrs. Seese had worked at a number of jobs which Dr. Bronson classified as "medium" and "light to medium" work.

Based upon the various doctors' opinions, the referee found that Mrs. Seese can lift approximately 35 pounds on an occasional basis and approximately 15 to 20 pounds on

a frequent basis. He concluded, therefore, that Dr. Bronson's testimony is "nugatory," because he believed Dr. Bronson's testimony was based on an erroneous assumption that Mrs. Seese could only lift 20 pounds occasionally and ten pounds frequently. The referee also held that Mrs. Seese could return to the same types of work she did before her April 4, 1978 accident, and that she had not suffered a permanent partial *disability* in excess of the five percent *impairment* he had assigned her.

The Industrial Commission adopted the referee's findings of fact and conclusions of law whereupon Mrs. Seese moved for reconsideration. That motion was denied. Accordingly, Mrs. Seese has appealed to this Court.

### I.

The issue on review is whether there is substantial and competent evidence in the record to support the Commission's findings of fact, and also whether those findings of fact support its conclusions of law. I am unable to decide this issue, however, because the findings of the Commission are internally inconsistent.

The referee found, and the Commission later adopted as its own finding, that Mrs. Seese can lift 35 pounds on an occasional basis and approximately 15 to 20 pounds on a frequent basis. The referee held that this rendered Dr. Bronson's opinion "nugatory," because the referee believed Dr. Bronson's opinion was based on the assumption that Mrs. Seese could only lift up to ten pounds frequently and up to 20 pounds on an occasional basis. This is incorrect.

The evidence is clear that Dr. Bronson grounded his testimony of Mrs. Seese's disability upon the belief that Mrs. Seese cannot engage in work that is classified as "medium" work. He defined "medium" work as involving lifting up to 25 pounds frequently and up to 50 pounds occasional-

---

1. Dr. Bronson defined "light" work as requiring frequent lifting of up to ten pounds and occasional lifting of no more than 20 pounds. He defined "medium" work as requiring frequent lifting of up to 25 pounds and occasional lifting of no more than 50 pounds.

ly. This belief is correct in light of the medical evidence and the referee's findings of what Mrs. Seese can now do. According to the referee's findings, Mrs. Seese *is* precluded from engaging in "medium" work, which she once could do, and this supports Dr. Bronson's testimony.

For the referee to make findings that support Mrs. Seese's contention—that she is precluded from engaging in some types of work—and then hold that the expert opinion rendered on her behalf is based on errant assumptions, which the referee, however, concluded to be correct, is inconsistent and arbitrary. I cannot affirm such findings and conclusions, and this Court should remand with respect to this issue.

The majority opinion blithely ignores this glaring inconsistency. Such ignorance constitutes abdication of judicial responsibilities. As I wrote in my dissent in *Nigherbon v. Feller Trucking Co.,* 109 Idaho 233, 237, 706 P.2d 1344, 1348 (1985), the term "substantial and competent evidence" is a difficult term to "articulately define." It is not a standard of review that constitutes "the mere rubber-stamping of whatever the Commission factually decides." Rather, it is a standard that does have some teeth to it, a standard which should require us to carefully read the entire record and compare it with what the Commission has found as its facts. Deference to the Commission's fact-finding conclusions is proper, but deference should not be elevated to obeisance. Where there is no evidence to support the Commission's conclusion, or where findings by the Commission are internally inconsistent, this Court should not hesitate to reverse. *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1984); *Wynn v. J.R. Simplot,* 105 Idaho 102, 666 P.2d 629 (1983); *Laird v. State Highway Department,* 80 Idaho 12, 323 P.2d 1079 (1958). The majority may ignore, but it cannot deny, the fact that the Commission's conclusions in this case are internally inconsistent. The majority's attempt at hiding the Commission's inconsistent findings is the best proof there is that a serious problem exists with what the Commission has

done, and that a remand to the Commission for clarification is necessary.

## II.

A further troublesome issue involves the Commission's handling of the pain Mrs. Seese is experiencing, and how that relates to her disability rating. The Commission found that Mrs. Seese's pain, which is caused by her work-related accident, has permanently impaired her five percent. Nevertheless, the Commission decided against assigning a disability rating in excess of the impairment rating by holding, without explaining, that Mrs. Seese can do any and all work that any woman of her age and build can do who does not have a history of back problems. This is inconsistent. I do not see how a person, as a matter of law, who is five percent impaired, can be held to be as capable of earning a living as an individual who is not so impaired. The Commission's failure to explain this conclusion also fatally renders this conclusion as inconsistent and arbitrary. Thus, this Court should also remand to the Commission to determine whether Mrs. Seese's impairment has *disabled* her to a degree in excess of her *impairment.*

The majority also refuses to explain this inconsistency. Surely review in a "substantial and competent evidence" case does not allow this Court to permit the Commission to say on the one hand that the claimant is impaired and then on the other hand say that the claimant can do all the work of an individual who is not so impaired. Mrs. Seese, in addition to this Court, deserves an explanation.

The Commission's conclusions on remand may result in a finding of *disability* in excess of *impairment,* which, of course, under Idaho's Worker's Compensation Law, is probable. As we noted in *Curtis v. Shoshone County Sheriff's Office,* 102 Idaho 300, 309, 629 P.2d 696, 701 (1981), the terms "permanent impairment" (as defined in I.C. § 72–422) and "permanent disability" (as defined in I.C. § 72–423) involve "different but related classifications." The difference was explained by this Court in

*Thom v. Callahan,* 97 Idaho 151, 156, 540 P.2d 1330, 1335 (1975):

> *"Permanent impairment"* is the physical abnormality or loss caused by or remaining after the industrial accident. Such impairment is a *basic consideration* in the evaluation of *permanent disability.* Evaluation of "permanent impairment" is a medical appraisal of the effect of the accident-caused loss or impairment on the claimant's day-to-day activities. *"Permanent disability,"* on the other hand, results when the impairment causes a loss or reduction of the claimant's ability to engage in "gainful activity." The evaluation of permanent disability is an appraisal of the claimant's present and future ability to engage in "gainful activity" as it is affected by claimant's permanent impairment and by various non-medical factors. (Footnotes quoting I.C. §§ 72–422 through –425 omitted) (emphasis in original).

Thus, because a determination of *disability* incorporates not only the individual's *impairment* but other non-medical factors that impact upon a person's wage-earning capacity, the two—impairment and disability—need not always be identical.

The inconsistencies manifested in the Commission's findings and conclusions requires this Court to remand to the Commission for a re-evaluation of the evidence and a new set of findings of fact and conclusions of law. The majority refuses to do this. I therefore dissent.

HUNTLEY, J., concurs.