851 P.2d 341

**Daniel N. MONROE, Claimant–Appellant,**

v.

**CHUCK & DEL'S, INC., Employer, and Idaho State Insurance Fund, Surety, Defendants–Respondents.**

No. 19633.

Supreme Court of Idaho, Boise, January 1993 Term.

April 23, 1993.

**628**

Byron Meredith, Nampa, for claimant-appellant.

Karl M. Shurtliff, Boise, for defendants-respondents.

McDEVITT, Chief Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

On May 15, 1990, Daniel N. Monroe ("Monroe"), who had been employed by respondent, Chuck & Del's, Inc. ("Chuck & Del's"), as an air conditioning and heating system servicer and installer, filed a worker's compensation application for hearing. Monroe alleged that on April 29, 1987, he "injured his back when installing a window air conditioner," causing "disc herniation at L4, 5 and L5, S1." He framed the issue as "[w]hether or not [he] is entitled to medical, PPI and permanent disability benefits."

On June 1, 1990, the State Insurance Fund filed its answer to the application for hearing. Among other things, it denied that notice of injury was given to the employer within sixty days of the accident or that Monroe was permanently disabled, it admitted that Monroe was temporarily disabled from September 28, 1987 through February 7, 1988, and it asserted that Monroe's "current condition is the result of subsequent activity and therefore not related to the alleged injury of April 29, 1987."

A hearing was held on October 12, 1990, in Boise, Idaho, before a referee. On September 20, 1991, the referee issued findings of fact, conclusions of law, and proposed order. The referee's recommendation was based upon the oral and documentary evidence adduced at the hearing, posthearing depositions, and briefs of counsel. The referee stated the issues as:

(1) Whether the Claimant's symptoms associated with a bulging disc at the L5–S1 level are related to the April 29, 1987 injury;

(2) Whether the Claimant is entitled to medical care and workers' compensation benefits for these additional symptoms;

(3) Whether the Claimant is entitled to a permanent partial impairment rating as a result of the April 29, 1987 injury;

(4) Whether the Claimant is entitled to a permanent partial disability rating exceeding the impairment rating; and

(5) Determination of the amount of any impairment and disability rating.

Among other things, the referee found that Monroe suffered a "new and distinct injury in July of 1989," and concluded that "[s]ince [Monroe's] new symptoms are not the direct and natural consequence or result of his 1987 injury, he is unable to recover workers' compensation benefits for the condition,"[1] and that he "does not have a permanent partial disability which exceeds the permanent physical impairment rate of 10% of the whole person" because he "has not established any non-medical factors which increase his disability above the permanent physical impairment rate." Finally, the referee proposed that Monroe be allowed income benefits for permanent partial disability of 10% of the whole person for fifty weeks, but be denied benefits for his herniated disc at the L5–S1 level. The Industrial Commission of the State of Idaho ("Commission"), after conducting a *de novo* review of the record, adopted the referee's proposal on September 20, 1991.

## ANALYSIS

We address the following issues raised by Monroe:

I. Is there substantial competent evidence to support the Commission's finding that Monroe is not entitled to benefits for problems associated with a bulging or herniated disc at the L5–S1 level because his 1989 injury is not causally related to his 1987 injury?

II. Is there substantial competent evidence to support the Commission's denial of permanent disability benefits above the 10% permanent partial impairment rating?

---

1. The referee found that "[i]n April of 1987, the Claimant injured his back while attempting to reinstall an air conditioner which had been removed for service" while he was employed with Chuck & Del's. In addition, the referee found:

 In July of 1989, the Claimant experienced an episode of severe back pain at his home. The Claimant had dug a trench the previous week for placement of a sprinkler system. Some dirt had fallen into the trench and the Claimant intended to remove the dirt. He lifted a shovel in preparation for doing so and experienced severe back pain extending into the left leg and foot. The pain was sufficiently severe that he had to crawl into his house

## I.

IS THERE SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S FINDING THAT MONROE IS NOT ENTITLED TO BENEFITS FOR PROBLEMS ASSOCIATED WITH A BULGING OR HERNIATED DISC AT THE L5–S1 LEVEL BECAUSE HIS 1989 INJURY IS NOT CAUSALLY RELATED TO HIS 1987 INJURY?

### A. *Standard of Review.*

This Court has appellate jurisdiction over orders of the Industrial Commission. Idaho Const. art. V, § 9. The conditions, scope, and procedure on appeal from an order of the Commission may be provided by the legislature. Idaho Const. art. V, § 9. In this regard, the legislature has limited this Court's ability to set aside a decision of the Commission to the following four grounds:

(1) The commission's findings of fact are not based on any substantial competent evidence;

(2) The commission has acted without jurisdiction or in excess of its powers;

(3) The findings of fact, order or award were procured by fraud;

(4) The findings of fact do not as a matter of law support the order or award.

I.C. § 72–732.

■ In regard to the first ground for setting aside an order of the Commission, our review of the Commission's findings of fact "does not entail a *de novo* determination of fact."[2] *Graham v. Larry Donohoe*

---

as he could not rise. Since the incident at Claimant's home, he has noted increased symptoms and different symptoms compared to those which were present prior to the incident. The pain is now constant in the Claimant's left leg, and he notes numbness on the bottom of his left foot. He experiences more problems doing his work and requires assistance when any heavy lifting is necessary.

2. We have explained that *de novo* "generally means a new hearing or a hearing for the second time, contemplating an entire trial in the same manner in which the matter was heard and a review of previous hearing." *Beker Indus.*

*Logging,* 103 Idaho 824, 825, 654 P.2d 1377, 1378 (1982), citing I.C. § 72–732. In other words, this Court does not try the matter anew, acting as a trial court does in weighing the evidence before it. Rather, "[w]e are not concerned with whether this Court would have reached the same conclusion, but rather, with whether the findings by the Commission are supported by substantial, competent evidence." *Graham,* 103 Idaho at 825–26, 654 P.2d at 1378–79.

**B. *Application of the Standard of Review.***

■ Monroe alleges that the Commission erred in concluding that his 1989 injury was not a work-related injury. This conclusion rests wholly upon the testimony of an expert witness, Dr. Gary Botimer, a physician who treated Monroe after the 1987 and 1989 injuries. A review of the transcript of his deposition discloses that he testified that Monroe's "symptoms are from the second" injury. Further, Dr. Botimer testified that between the time of the surgery following the 1987 injury and the 1989 injury, Monroe was asymptomatic. While there may be conflicting testimony, or testimony capable of different interpretations, in Dr. Botimer's deposition testimony, this Court is not in the business of weighing evidence in Industrial Commission cases. The above-stated testimony of Dr. Botimer constitutes substantial competent evidence in support of the Commission's conclusion that the 1989 injury is not causally related to the 1987 injury and, therefore, not a compensable work-related injury.

We note that the present case is not controlled by this Court's decision in *Johnson v. Boise Cascade Corp.,* 93 Idaho 107, 456 P.2d 751 (1969). In *Johnson,* the claimant suffered an on-the-job back injury. After the injury, he underwent surgeries and recurrences of back pain. Approximately three years after the accident, he slipped while attempting to get into a pick-up truck and immediately experienced back pain. He underwent more treatment. The second incident was an off-the-job accident. On appeal, this Court affirmed the Commis-

sion's award to the claimant, holding that "the 'pick-up truck' accident was not an overriding trauma which superseded respondent's previous history" and that "the facts in this case support the Board's conclusion that the 'pick-up truck' incident aggravated a pre-existing condition...." *Johnson,* 93 Idaho at 11–12, 456 P.2d at 755–56. In the present case, there was no pre-existing condition, as Monroe was asymptomatic after the 1987 injury. It was not until the 1989 ditch-cleaning incident that Monroe first experienced symptoms indicative of the type of injury he suffered.

**II.**

**IS THERE SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE COMMISSION'S DENIAL OF PERMANENT DISABILITY BENEFITS ABOVE THE 10% PERMANENT PARTIAL IMPAIRMENT RATING?**

The Commission ruled:

Though the evidence shows that the Claimant has some increased difficulty in performing his current employment and requires assistance with heavy lifting at times, at least part of this increased difficulty is attributable to the July 19, 1989, incident at home, rather than to the April, 1987, work-related injury. The Claimant's rate of earnings is higher at the present time than it was at the time of his injury. The Claimant has not established any non-medical factors which increase his disability above the permanent physical impairment rate. The Referee therefore concludes that the Claimant does not have a permanent partial disability which exceeds the permanent physical impairment rate of 10% of the whole person.

Regarding appellant's impairment rating, the referee found:

During his deposition, Dr. Botimer for the first time expressed an opinion concerning an impairment rating for the disc

*Inc. v. Georgetown Irr. Dist.,* 101 Idaho 187, 190, 610 P.2d 546, 549 (1980), citing *Black's Law Dictionary,* 5th ed. 1979, p. 649. Further, "[o]n such a hearing the court hears the matter as a court of original and not appellate jurisdiction." *Beker Indus.,* 101 Idaho at 190, 610 P.2d at 549.

injury at the L4–5 level and surgery which had been performed in November of 1987. He estimates that the Claimant has a 10% impairment of the whole person as a result of that injury. The Defendants do not dispute that impairment rating.

. . . . .

The Referee finds that the Claimant has a permanent physical impairment of 10% of the whole person as a result of the April 29, 1987, injury for which he is entitled to income benefits. The Claimant has not established that non-medical factors increase the Claimant's permanent partial disability above the impairment rating. The Referee, therefore, finds that the Claimant has a permanent partial disability of 10% of the whole person as a result of the April 29, 1987, injury which includes consideration of the permanent physical impairment and pertinent non-medical factors.

 The claimant bears the burden of proving disability in excess of his or her impairment rating. *Seese v. Ideal of Idaho, Inc.*, 110 Idaho 32, 34, 714 P.2d 1, 3 (1985). "The test for such determination is not whether the claimant is able to work at some employment, but rather whether the physical impairment, taken in conjunction with nonmedical factors, has reduced the claimant's capacity for gainful activity." *Seese*, 110 Idaho at 34, 714 P.2d at 3.

In *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 912–13, 772 P.2d 119, 119–20 (1989) (*Horton II*), this Court addressed "whether physical impairments that arose after the work-related injury to the employee (Horton), but which were the result of physical conditions that pre-existed the work-related injury, should be considered by the Commission when making a determination of the degree of Horton's permanent disability." Horton had appealed from the Commission's decision finding him to be permanently partially impaired to the ex-

tent to 12% of the whole person and permanently disabled to the extent of 30% of the whole person. This Court held that "all physical impairments that were caused by the work-related injury and by all pre-existing conditions should be taken into account" when evaluating permanent disability as prescribed in I.C. §§ 72–425 and 72–730. *Horton II*, 115 Idaho at 917, 772 P.2d at 124. However, we disagreed that liability could be apportioned to the employer where "[t]he injury to Horton's right hip did not produce the symptomatology and the disability to Horton's left hip, his shoulders, and his back. These impairments arose independently. They were, as the Commission said, 'unrelated.'"[3] *Horton II*, 115 Idaho at 919, 772 P.2d at 126.

Monroe's argument as to the consideration of non-medical factors is premised upon his contention that the Commission's finding that his 1989 injury was not a work-related injury was not supported by substantial and competent evidence. We have held that that finding is supported by substantial and competent evidence, and therefore, non-medical factors resulting from that injury need not be considered.

Likewise, Monroe's 1989 injury constitutes an independent impairment, unrelated to his 1987 work-related injury. We hold that the Commission properly evaluated Monroe's permanent disability, and that there is substantial and competent evidence to support its denial of awarding disability above impairment.

For the foregoing reasons, we affirm the decision of the Commission.

Costs to respondents.

JOHNSON and TROUT, JJ., and REINHARDT, J., Pro Tem, concur.

BISTLINE, Justice, dissenting.

The majority's affirmance of the Industrial Commission's decision is incorrect in that the majority's opinion mischaracterizes

---

**3.** "In 1974, claimant Horton suffered a fracture of his right hip from an accident arising out of and in the course of his employment." *Horton v. Garrett Freightlines, Inc.*, 106 Idaho 895, 895, 684 P.2d 297, 297 (1984) (*Horton I*). Beginning

in the spring of 1984 and continuing through February of 1985, Horton began experiencing left hip, left shoulder, and back pains. *Horton II*, 115 Idaho at 913, 772 P.2d at 120.

and overlooks key uncontroverted facts. Moreover, contrary to the majority's assertions, the case of *Johnson v. Boise Cascade Corp.*, 93 Idaho 107, 456 P.2d 751 (1969), compels a reversal.

*Johnson* presents facts that are markedly similar to the case *sub judice.* Johnson had injured his back in the course of employment. The doctor believed that Johnson had a possible lumbar disc protrusion at the L4–5 level, which was removed in several surgeries. Over three years later, Johnson slipped while trying to get into a truck, reached for the steering wheel to keep from falling, and experienced low back pain. His doctor stated that the truck incident had aggravated his past back pathology. In a later surgery, the doctor removed the L4–5 disc, but the patient still suffered from arachnoiditis, a condition which could be caused by trauma or chemicals. Apparently, the only testimony was from Johnson's doctor. The Industrial Accident Board there found that "the condition of said disc material and continued complaints of claimant prior to said surgery [after the non-work-related accident] show a direct causal connection with the [earlier] industrial accident." In Monroe's case, his doctor's deposition testimony (which, by stipulation of both parties, was the only evidence before the referee and therefore was uncontroverted) stated that Monroe's first accident caused an injury at the L4–5 level, which was remedied by surgery, and caused a bulging disc at the L5–S1 space, as demonstrated by an MRI scan.

When Monroe picked up his shovel (presumably less traumatic to the back than preventing a fall out of a pick-up truck) two years later, he injured the disc at L5–S1 and became symptomatic. In fact, the only difference between the two cases is that Johnson maintained roughly the same symptoms throughout his injuries, whereas Monroe developed new symptoms after his most recent accident.[4]

In light of the similarities between these case, it is surprising that the referee never addresses or even cites Johnson. The majority, in an after-the-fact attempted save, tries to distinguish Johnson from the instant case by stating that "[i]n the present case, there was no pre-existing condition, as Monroe was asymptomatic after the 1987 injury." I would agree with the majority's distinction if the majority's factual assertion was not patently erroneous. That assertion, however, is erroneous. The referee never expressly made a finding as to whether there was a pre-existing condition. The referee, however, *did* find that Monroe "suffered a new and distinct injury in July of 1989 which brought on [his] left-sided symptoms and evidently resulted in an *additional* bulging or herniation of the disc in question." Findings of Fact, p. 6 (emphasis added). The referee continued, "The Claimant's symptoms were dramatic and different and apparently resulted from some *increased* pathology at the L5–S1 level." Id. (emphasis added). It is clear, then, that the referee accepted that Monroe had pre-existing bulging or herniation and

---

4. The majority's (and referee's) preoccupation with symptoms is odd, to say the least. For instance, the referee defined "[t]he primary issue to be determined" as "whether the Claimant's left-sided *symptoms,* emanating from the bulging disc at L5–S1 on the left side, and subsequent treatment of this condition, are causally related to the Claimant's 1987 injury so that he is entitled to workers' compensation benefits for this condition." Findings of Fact, p. 6 (emphasis added). Nowhere in the worker's compensation act does the word "symptoms" appear. The relevant inquiry is, as the majority correctly notes, whether there is "substantial competent evidence to support the Commission's finding that Monroe is not entitled to benefits for problems associated with a bulging or herniated disc at the L5–S1 level *because his 1989 injury is not causally related to his 1987 injury.*" Even the

majority, then recognizes that the issue is whether Monroe's second injury was caused in some way by his 1987 injury.

Moreover, the referee notes that Dr. Botimer remarked upon a "bulging disc at the L5–S1 level on the left side which he had elected not to enter at the time of the Claimant's previous surgery because the Claimant did not have left-sided symptoms at that time." Findings of Fact, p. 5. Dr. Botimer then formed the opinion that "the original injury ruptured or bulged the disc at L5–S1 and the second episode continued that process to make him symptomatic." The doctor clearly delineated the difference between "injuries" and "symptoms" and implicitly testified that an injury could exist without symptoms. The referee never stated that he disbelieved the doctor's expertise.

pathology at that same disc that he later injured.

It is noteworthy Johnson was not simply a case where this Court deferred to the Industrial Commission's findings of fact under a substantial, competent evidence standard. In its discussion of *Johnson*, the majority only tells half the story: this Court actually declared, "Not only do we believe that the facts in this case support the Board's conclusion that the 'pick-up truck' incident aggravated a pre-existing condition, *but we believe that a contrary conclusion on the part of the Board would have been unreasonable.*" *Johnson*, 93 Idaho at 111–12, 456 P.2d at 755–56 (emphasis added).

The referee appeared to define causation far too narrowly. *Johnson* held that the non-work related pickup truck accident was not a superseding trauma. It is thus hard to imagine how the referee could find that Monroe's second injury was a "new and distinct injury with no direct causal connection to the Claimant's April, 1987, injury," even though the most recent injury "was superimposed on the preexisting pathology."

In addition, an examination of Dr. Botimer's deposition transcript shows that the evidence adduced therein utterly failed to support the referee's finding of lack of causation. For instance, Dr. Botimer stated,

> The question is how much do you ascribe to the first and how much do you ascribe to the second injury as to causing his true problem. When you phrase it symptoms, I have to say the symptoms are from the second. When you say which is responsible or led up to or compromised him so that he could have gotten the second one, then you have to say that's related to the first one also.

Deposition transcript, p. 22. Another example is this exchange between Dr. Botimer and Mr. Shurtliff, respondents' attorney:

[Shurtliff]: The initial injury created the condition, L5–S1?

[Botimer]: Correct.

[Shurtliff]: And the second injury exacerbated it?

[Botimer]: That's correct.

*Id.*, p. 20. The only evidence that could conceivably be construed as supporting the referee's conclusion came about during cross-examination:

[Shurtliff]: You *don't have a crystal ball* that can tell you *with a surety* that but for that previous injury, he wouldn't have hurt his back, L5–S1, on that day that he cleaned his ditch, can you?

[Botimer]: That's correct.

*Id.* (emphasis added); and

[Shurtliff]: Well, but isn't that true—*it would be extreme*, but that's true right now of any of the four of us who've never had a previous problem that we could, in just doing something ordinary, go over and herniate a disc?

[Botimer]: People have done herniated discs with normal activities like that, but *it's unusual.*[5]

[Shurtliff]: But not medically *impossible?*

[Botimer]: That's correct.

*Id.*, p. 25 (emphasis added).

Thus, the uncontested evidence clearly demonstrated that it was highly probable, although not completely impossible, that the first injury was causally related to the second injury. But in fact, all that is necessary is that an expert testify to a reasonable degree of medical probability. This Dr. Botimer did.

In light of the overwhelming evidence supporting the conclusion that the disc already damaged in the first accident further ruptured in the second accident, there was no substantial competent evidence to support the conclusion that the herniated disk was in no way caused by the first accident.

Although the substantial and competent evidence test dictates that we defer to the

---

5. Dr. Botimer's testimony that such an injury would be unusual for a person with an uninjured back would seem to indicate that in light of the fact that Monroe had previously injured that same disc, it would be even less probable that the second injury was not caused by the first.

findings of the Industrial Commission and its referees, it is not to be, nor should it be, used as a "rubber stamp" to affirm each and every Industrial Commission decision. This is particularly true when the Commission fails to follow applicable Idaho case law. *See, e.g., Hill v. E & L Farms,* 123 Idaho 371, 848 P.2d 429 (1993). And it is even more true when the only evidence is uncontroverted deposition testimony, in which credibility is not an issue.

This Court should vacate the Industrial Commission's order and remand the cause for proceedings consistent with our case law and with the factual reality of Monroe's unfortunate situation.